IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal No. 4:05-CR-218 |
| v. | ) |
| | ) GOVERNMENT'S RESPONSE TO |
| DENNIS DEAN SMITH, | ) DEFENDANT'S MOTION FOR |
| | ) COMPASSIONATE RELEASE |
| Defendant. | ) |

The government files this response to Defendant's Pro Se Motion, seeking relief under Title 18 U.S.C. § 3582(c)(1)(A)(i)[;] 28 U.S.C. § 2241(c)" Defendant's motion appears to raise two distinct issues. First, Defendant seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic. Second, Defendant purports to attack the validity of his sentence based on changes to enhanced penalties under the First Step Act.

The Court should deny Defendant's motion for compassionate release because a reduction of his sentence is inconsistent with the 18 U.S.C. § 3553(a) sentencing factors and he remains a danger to the community. Further, the section of the First Step Act regarding penalty enhancements is not retroactive. Disregarding legislative intent, and retroactively applying the non-retroactive amendment in support of compassionate release, would be contrary to the principle of finality of sentences, and inconsistent with policy statements in §1B1.13.

1

I.  **There are no extraordinary and compelling reasons for Defendant to be entitled to compassionate release.**

1. Through an investigation into suspicious packages being delivered through the United States Postal Service, law enforcement uncovered a conspiracy involving heroin, methamphetamine, and prescription opiates. (DCD 53, PSR ¶¶ 4-10.) Defendant proceeded to trial. At trial, evidence showed that Gary Christinson was receiving methamphetamine and heroin from an associate in Arizona through the mail. (PSR ¶ 4-5.) Christinson, who testified at trial, traded methamphetamine to Defendant in exchange for Oxycontin, a prescription opiate. (PSR. ¶ 6.) Marilyn Zarger, who also testified at trial, would help Christinson distribute methamphetamine to Defendant. (PST. ¶ 7.) When one package went missing, Defendant offered to "take care of it," implying he would recover the methamphetamine. *United States v. Smith*, 487 F.3d 618, 620 (8th Cir. 2007). The missing package contained more than 50 grams of actual methamphetamine and six grams of "black tar" heroin, and "testimony was presented that four to five earlier shipments contained comparable quantities and quality to the seized shipment." *Id*. Another government witness, Justin Braaksma, testified that he purchased methamphetamine from Defendant, and on one occasion, delivered methamphetamine to another customer for Defendant. *Id*. Defendant was responsible for a significant quantity of illegal controlled substances, namely: 138.7 grams of methamphetamine at 71% pure (98.47 grams actual); 1.02 grams of heroin; 26.83 grams of marijuana; four alprazolam tablets; and 23 Oxycodone tablets. (PSR ¶ 9.)

2. On December 14, 2005, Defendant was found guilty of Count One, Conspiracy to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. (DCD 36.) The jury specifically found, by answering an interrogatory, that Defendant's conspiracy involved at least 50 grams of actual methamphetamine. (*Id.*)

3. On May 31, 2006, the Court sentenced Defendant to life in prison, to be served concurrently with a 51-month revocation of supervised release sentence imposed in case 4:94-cr-00052, with 10 years of supervised release to follow. (DCD 47.) Defendant's minimum term of imprisonment was life. (DCD 47 at 83.)

4. The seriousness of Defendant's conduct in the instant offense is only augmented by his prior criminal history and personal characteristics, including a prior federal drug conviction in which he was on supervised release for at the time of the instant offense.(PSR ¶ 25.) Defendant's criminal history is significant and violent; he is a career offender. Defendant has a total of 18 criminal history points for a criminal history category of VI. (PSR ¶ 50-51.) Starting at age 18, Defendant has been convicted of the following: 1981-Extortion (in which Defendant held a knife to his victim's throat and took the victim's wallet; 1982-Possession of Drug Paraphernalia/Assault; 1982-Delivery of a Controlled Substance; 1982-OWI; 1984-Delivery of Cocaine/Possession of Marijuana/Theft 5th; 1984-Burglary 2nd (found guilty by jury trial); 1985-Assault (at his initial appearance for his burglary charge, Defendant attacked the prosecutor); 1989-Criminal Trespass (in which Defendant entered victim's home and assaulted the victim); 1990-OWI; 1990-OWI; 1990-Assault (Defendant assaulted two women by

throwing them to the ground. Defendant began chocking and striking one in the face and head with his fists. Later, Defendant threatened one of them, though this charge was dismissed); 1991-Possession of Marijuana; 1991-OWI 3rd; 1992-Interference with Official Acts/five counts of Assault; 1994-Conspiracy to Distribute Methamphetamine, in the Southern District of Iowa (sentenced to 107 months' imprisonment); 2002-Reckless Use Fire-Explosives/Criminal Mischief/Interference with Official Acts (Defendant lit a rag that was coming out of a bottle filled with gasoline, threw it at officers, causing the trailer they were in to catch fire. Defendant then poured gasoline on himself, and kicked several officers in the face, bit, and spat on them as they stopped him from harming himself); 2005-OWI. (PSR ¶¶ 29-46.)

5. While on federal supervised release, after two non-compliance reports were filed, Defendant's probation was revoked, and he was sentenced to 27 month's imprisonment. (PSR ¶ 44.) Defendant's ongoing criminal conduct, particularly with a history of drug-related offenses and extreme acts of violence, is of great concern to the government. Especially considering during the instant offense, Defendant was on federal supervised release.

6. Defendant is nearly 58 years old and incarcerated at FCI Coleman. Because he was sentenced to life imprisonment, he has no expected release date. *Find an Inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 30, 2021).

7. Defendant contends that he submitted a request with the Warden asking for compassionate release due to claimed medical conditions and concerns with

COVID-19. The government obtained this request. The Warden denied Defendant's request, as he did not meet the medical criteria. (Gov. Ex. 2.)

8.  On February 9, 2021, Defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (DCD 75.) Defendant asserts that his health concerns during the COVID-19 pandemic are extraordinary and compelling reasons that justify early release from prison. Defendant also alleges that he is more vulnerable to COVID-19.

9.  A defendant may file such a motion, however, only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); 28 C.F.R. § 571.61 (describing initiation of request for compassionate release). Defendant's motion provides some evidence that he meets this hurdle. The government asks that the court adjudicate the merits of Defendant's motion.

10. The burden is on defendant to show that he is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A). *United States v. Korn*, No. 15-CR-81S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020); *United States v. Dembry*, No. 3:06-cr-0587, Document 125, at 5 (S.D. Ia. Mar. 28, 2020) (Jarvey, C.J.); *cf. United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2019) (burden is on defendant to show a sentence reduction is warranted under 18 U.S.C. § 3582(c)(2)).

11. Under the statute, this court may reduce a term of imprisonment if defendant establishes that: (1) "extraordinary and compelling reasons" support a reduction; (2) the reduction is consistent with the Sentencing Commission's applicable policy statements; (3) the factors set forth in 18 U.S.C. § 3553(a) support the reduction; and (4) the defendant is not a danger to any victim or the community as provided in 18 U.S.C. § 3142(g). 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

12. In May 2020, the Department of Justice refined its position on compassionate release as follows: "under present circumstances, an inmate's diagnosis with a medical condition that the CDC has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover, presents an 'extraordinary and compelling reason[]' that may warrant compassionate release if other criteria are also met." 18 U.S.C. 3582(c)(1)(A); *see, e.g.*, *United States v. Pabon*, No. 17-CR-165, 2020 WL 2112265, at *3 (E.D. Pa. May 4, 2020) (noting and agreeing with Government's position); *see also* USSG §1B1.13(2) (court must also determine that the inmate "is not a danger to the safety of any other person or to the community").

13. Defendant alleges he suffers from the following: hypertension, asthma, calcified granulomas and lymph nodes, head injuries, hepatitis, high blood pressure, spinal injury, and obesity. (DCD 74.) Defendant did not submit any medical evidence to establish such. However, the government obtained medical evidence that establish that he suffers from a history of hepatitis, hypertension (benign essential), asthma, allergic rhinitis (runny or stuffy nose), and low back pain (back surgery in 2015). (*See generally*, Government Exhibit (GX 1.) Notably, in November 2020, Defendant refused

treatment for his hepatitis. (GX 1 at 5.) Defendant is currently prescribed 800mg of Ibuprofen, blood pressure medication, duloxetine, and medication for nerve pain, but was previously using an inhaler and intermittently prescribed nasal spray. (*See generally*, GX 1). Defendant receive the influenza vaccine on November 11, 2020. (*Id.* at 53.) The CDC has identified moderate-to-severe asthma and hypertension (high blood pressure) as conditions that increases one's risk of severe illness from COVID-19. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 20, 2021).

14. As part of this response, the government files, under seal, the most recent one year of BOP medical records as GX 1. It appears Defendant's conditions have been successfully treated by medication and treatment. (GX 1, *generally*.) Regardless, none of hepatitis, asthma, hypertension, allergic rhinitis, and low back pain are conditions that amount to an extraordinary and compelling reason that may warrant compassionate release. The CDC guidance provides that people with hypertension and asthma *might be at an increased risk* for severe illness from COVID-19, not that such persons *are at increased risk*.

15. However, even if the Court chooses to find that *during the COVID-19 pandemic*, Defendant's hepatitis, asthma, or hypertension presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," USSG §1B1.13, comment. (n.1(A)(ii)(I)), in that

Defendant's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished by this chronic medical condition and sets forth an "extraordinary and compelling" reason for purposes of 18 U.S.C. § 3582(c) does not mean that defendant is entitled to compassionate release. He still must establish that the 18 U.S.C. § 3553(a) factors support his release and that he is not a danger to the community. Because Defendant is unable to satisfy either of these prerequisites, his motion should be denied.

16. The 18 U.S.C. § 3553(a) factors weigh strongly against granting compassionate release. The factors all militate against release. Defendant was involved in a multi-person, multi-state, multi-drug conspiracy with an exceptionally poor criminal history. Defendant denied responsibility at his sentencing and has yet to accept responsibility for his involvement in the instant offense. (DCD at 52, 72 at 24.) Release at this stage would not protect the public from further crimes of Defendant, adequately deter his criminal conduct, provide just punishment, or promote Defendant's respect for the law. As shown, especially by way of his prior federal conviction, Defendant does not intend to live a law-abiding life.

17. For many of the same reasons, Defendant remains a threat to the safety of the community. Defendant alleges he has minimal criminal history and has "no violence whatsoever" in his criminal history – patently false statements. (DCD 74 at 23; *see* PSR ¶¶ 29, 30, 36, 37, 40, 45.) Defendant has repeatedly committed serious crimes throughout his life. He has nine drug/alcohol-related convictions, including OWIs, and six convictions with underlying assaultive and/or violent natures. (*See*

*generally*, PSR ¶¶ 29-46.) Prior convictions and imprisonment terms, including a federal sentence, did not correct the Defendant's behavior. Even while under supervision, Defendant continued to fail to abide by his conditions. If released now, he will likely return to a life of crime.

18. Defendant also has "failed to provide any evidence that there is a suitable release residence or provided any release plan to ensure that [he] is properly monitored," nor has Defendant demonstrated a means of travel to a suitable residence that is currently available and safe. *United States v. Van Dyke*, No. 2:15-CR-0025, 2020 WL 1811346, at *3 (E.D. Wash. Apr. 8, 2020). "Shortening a defendant's sentence where there is no adequate release plan offers no benefit to the health of the inmate and in the process likely further endangers the community into which the defendant is released." *United States v. Allison*, No. CR16-5207RBL, 2020 WL 3077150, at *4 (W.D. Wash. June 10, 2020).

19. Defendant also alleges that the BOP is not equipped to handle COVID-19. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. April 2, 2020); *see, e.g.*, *United States v. Alam*, 960 F.3d 831, 835-36 (6th Cir. 2020) ("The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk.").

20. There appears to be currently a very low transmission of COVID-19 at FCI Coleman Medium. As of March 23, 2021, there are 0 staff confirmed cases and 46 inmate confirmed cases. BOP has shown they are taking the appropriate steps to limit transmission. *See COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 23, 2021). Further, as of March 23, 2021, BOP is reporting that they have administered 88,026 doses of the COVID-19 vaccine. At FCI Coleman, 353 staff have been inoculated and 563 inmates have been inoculated. *See Id.* FCI Coleman Medium currently houses 1,332 total inmates. *See* https://www.bop.gov/locations/institutions/com/. The government spoke with a contact from BOP, and learned that information on Defendant's specific ability to obtain the COVID-19 vaccine is unknown at this time. (GX. 3)

21. Pursuant to the Court's order (DCD 77), the government files, under seal, Defendant's work history and medical records while in BOP as exhibits. (GX 4 [work history]; 5-21 [medical records]).

## II. Defendant is not entitled to compassionate released based on the First Step Act's change to penalty enhancements

22. Defendant alleges that his sentence of life imprisonment would be unconstitutional if he was sentenced today. Because Defendant was sentenced in 2006, the amendments to the enhanced mandatory minimums, and the amended definition of "serious drug felony" does not apply to him. Under Section 401(c) of First Step Act, the amended mandatory minimums, and amended definitions of "serious drug offense" only applies to sentencings after December 21, 2018. Relatedly, Section 404 of the First Step Act "makes retroactive only certain statutory changes pertaining

to threshold crack cocaine weights triggering mandatory minimum sentences," and it does not make the section 401 amendments retroactive. *See, United States v. Grant*, 813 F. App'x 246, 249 (8th Cir. 2020) (quoting *United States v. Wiseman*, 932 F.3d 411, 416-17 (6th Cir. 2019)). Defendant was convicted of an offense involving *methamphetamine*, not cocaine base, and therefore, he is not eligible for reduction of sentence or compassionate release. *See United States v. Olivares*, No. CR. 10-50118-01-JLV, 2020 WL 2737037, at *3 (D.S.D. May 26, 2020); *United States v. Jones*, No. 3:94-cr-00090, 2019 WL 1586814, at *2 (M.D. Tenn. Apr. 12, 2019), *aff'd*, No. 19-5433, 2019 WL 5436199 (6th Cir. Sept. 12, 2019); (Section 404 only applies to crack cocaine offenses); *United States v. Copple*, Case No. 17-cr-40011-009, 2019 WL 486440, at *2 (S.D. Ill. Feb. 7, 2019) (First Step Act applies only to crack cocaine offenses); *United States v. Gonzalez-Oseguera,* Crim. No. 06-00593, 2019 WL 1270916, at *2 (D. Haw. Mar. 19, 2019) (same). Finally, Defendant's divisibility argument has no bearing on application of prior drug convictions.

23.    Additionally, is not a proper basis for compassionate release. Congress directed the Sentencing Commission to issue policy statements describing what qualifies as "extraordinary and compelling reasons" for sentence reduction. 28 U.S.C. § 994(t). The Commission has done so and identified the "extraordinary and compelling reasons" that may justify compassionate release. *See* USSG §1B1.13 cmt. n.1. Defendant's request for compassionate release is not based on any of those grounds. Instead, it is based on the First Step Act's non-retroactive amendments to the enhanced penalties. Granting compassionate release on this basis would

11

effectively override Congress's decision that those amendments should not apply retroactively. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994) (statutes should not be applied retroactively "absent clear congressional intent favoring such a result"); *but see United States v. Brown*, No. 4:05-CR-227, 2020 WL 2091802, at *8-9 (S.D. Iowa Apr. 29, 2020) (Pratt, J.) (holding that stacked § 924(c) counts, in combination with other factors, supported compassionate release).

24.     Defendant was charged under Title 21, United States Code, Section 841(b)(1)(A), which carries a mandatory minimum sentence of ten years and up to life imprisonment. Because the government filed a notice of enhanced sentence, noticing Defendant's three prior felony drug convictions, Defendant's mandatory minimum was increased to life. Defendant alleges that he was sentenced pre-*Booker*, referencing the United States Supreme Court's ruling making the United States Sentencing Guidelines advisory. *United States v. Booker*, 543 U.S. 220 (2005). Defendant was in fact sentenced in 2006, post-*Booker*, which was noted at Defendant's sentencing. (DCD 52 at 7.) However, Defendant is a career offender, and even if sentenced today, his guidelines would still be 360-life imprisonment.

## Conclusion

25. For all these reasons, Defendant's motion should be denied. If this Court disagrees, however, then it should require defendant to undergo a 14-day quarantine period and medical clearance prior to his release to minimize the possibility of any spread of COVID-19 from the inmate to the public.

                                            Respectfully submitted,

                                            Richard D. Westphal
                                            Acting United States Attorney

                                            By:  */s/ Mallory E. Weiser*
                                            Mallory E. Weiser
                                            Special Assistant United States Attorney
                                            U.S. Courthouse Annex, Suite 286
                                            110 East Court Avenue
                                            Des Moines, Iowa 50309
                                            Tel: (515) 473-9300
                                            Fax: (515) 473-9292
                                            Email: mallory.weiser @usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2021, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:
\_\_\_\_U.S. Mail _____ Fax \_\_\_\_\_Hand Delivery
\_X\_\_ECF/Electronic filing   \_\_X\_\_Other means
(US Mail to BOP address)
UNITED STATES ATTORNEY

By: /s/ *Mallory E. Weiser*
    SAUSA